WATSON, Respondent, v. MODERN WOODMEN OF
AMERICA, a Corporation, Appellant

(293 N. W. 369.)

(File No. 8331. Opinion filed July 26, 1940.)

Rehearing Denied September 21, 1940.

**George G. Perrin,** of Rock Island, Ill., and **Turner &
McKenna,** of Sisseton, for Appellant.

**G. G. Lasell,** of Sisseton, and **M. C. Lasell,** of Aberdeen,
for Respondent.

POLLEY, J. Defendant is a fraternal benefit society
incorporated under the laws of the state of Illinois, and the
plaintiff is the beneficiary named in a benefit certificate for
$1,000, issued by defendant to John S. Watson on the 16th
day of February, 1928. John S. Watson and plaintiff were
husband and wife. On the 20th day of October, 1928, and
while said benefit certificate was in full force and effect said
Watson disappeared from his home at Sisseton, South Da-
kota, without known cause or reason, and although diligent
and extensive search and inquiry were made by plaintiff,
no trace of said Watson was found, nor was he ever again,
so far as known, seen alive by any of his friends or acquain-
tances.

It was afterwards learned that the automobile in which he left Sisseton was seen in Denver, Colorado, some time during the month of March, 1929. About the month of September, 1937, plaintiff received information that the dead body of an unknown man had been found on the prairie near Cheyenne Wells, in Cheyenne County, Colorado. This body was found on the 21st day of August, 1933. On receiving this information plaintiff visited the Board of Vital Statistics of the State of Colorado, in Denver, for the purpose of learning what she could relative to the said body. From what she learned there relative to the description of the said body, she was convinced of the possibility, at least, that the said body was the body of her husband. She then went to Cheyenne Wells in said county and contacted the coroner, A. H. Brentlinger, who had buried the said body. After talking with him she decided to have the said body exhumed for the purpose of further identification. In order to obtain permission to exhume said body she was required to show that there was some probability that the body that was found on the prairie in Cheyenne County, Colorado, in August, 1933, was the body of her husband. In order to show such probability she gave the following description of her husband: she said Mr. Watson had what she called an indentation on his skull that had been caused by the use of instruments at his birth. She said he had a long head but a short face; that a peculiarly of his face was that it was shorter or approximately the same length from the tip of the chin to the bridge of the nose as the distance from the bridge of the nose to the top of the head. She said he had a high prominent forehead, with a rounding protrusion over the eyes and a slight line directly across his forehead. She said his eyes were deep set in the sockets; that he had a square jaw with a deep cleft or dimple in the chin; she said his lower teeth were worn down, that when he closed his jaw, the upper teeth came well down over the lower teeth, and that his back teeth or molars were missing; that his upper molars were missing and that there was a bridge on the left side from the center incisor to the second bicuspid. She said his hands

and feet and ankles were slender and that he wore his shoes in a peculiar manner, i.e., he wore the toe of the shoe directly off on the toe and directly off at the back of the heel; that his height was about 5 feet 8 inches with his shoes on and a little over 5 feet 6 inches without his shoes. That he always wore high-top tan colored shoes. She said he had a peculiar way of lacing his shoes; that he always wore them laced very tightly together. Death had occurred some little time before the body was found and it was in an advanced state of decomposition. Much of the flesh had left the bones and the scalp had become separated from the skull and was some little distance from the skull.

Plaintiff, through her attorney, took the necessary steps to secure an order permitting the body to be exhumed and on the 27th day of October, 1937, it was exhumed. This was done in the presence of S. W. Baber, who was deputy sheriff of Cheyenne County during the years 1933 and 1934, A. H. Brentlinger, coroner of Cheyenne County, during the years 1933 through 1937, and F. B. Fletcher, who was sheriff of Cheyenne County during 1937. These three officers testified at the trial and corroborated practically all that plaintiff said relative to what they found when they exhumed the body of the dead person. The body was buried on the 30th day of August, 1933, a little more than four years before it was exhumed and of course there was nothing left of it but the skeleton; but in many respects it checked with the description given by the plaintiff.

The skull showed a very high forehead with a rounding protrusion above the eyes. The face appears to be fully as long from the bridge of the nose to the top of the head as it is from the bridge of the nose to the point of the chin. The lower jaw showed the cleft in the chin as plaintiff had described. The eye sockets were deep. The shoes which had not been removed from the dead persons feet were tan color, laced closely together just as the plaintiff said her husband always wore his shoes, and the shoes were worn at the heel and toe just as plaintiff said her husband always wore his shoes.

The witness, S. W. Baber, testified that at the time the

body was exhumed the plaintiff had a pair of shoes that she said had been worn by her husband before he left home and that these shoes were worn off on the heels and toes just as the plaintiff said her husband always wore his shoes.

Defendant makes the contention that the description given by plaintiff of her husband is not based upon her personal knowledge of him as she knew him in life, but that prior to her having seen the coroner she had seen Mr. Baber, who had been present when the body was removed from where it was found on the prairie, and from him had received the description of the dead body which she afterwards gave to the coroner as the description of her husband based upon her own knowledge. She testified that she did see and talk with Mr. Baber before she talked with the coroner and gave him a description of her husband based upon her own knowledge. Whether the description she gave to Mr. Brentlinger was based upon her own knowledge or was based upon what she had been told by Mr. Baber, we have no way of knowing except that she swore positively that the description she gave the coroner was based upon her own knowledge and not upon what she had been told by Mr. Baber.

She is corroborated to some extent by a picture, contained in the record, which purports to have been made from a photograph of her husband that was taken some two weeks before his disappearance. This picture shows that plaintiff was describing her husband as he actually was. The picture shows that he had an unusually high forehead; that he had a rounding protrusion just above his eyes; that his face was long above the bridge of his nose and short below the bridge of his nose. The picture also shows that he had a pronounced cleft in his chin. These peculiarities all show in the skull or lower jaw of the dead man. She testified that her husband always wore his shoes laced tightly together, and the shoes that were found on the feet of the dead man were laced tightly together. These shoes were worn off at the heel and the toe just as she said her husband used to wear his shoes, and the witness Baber testified that at the time he talked with the plaintiff she had a pair of shoes that she said her husband had worn and that they

were worn off at the heel and the toe just as the shoes on the feet of the dead man were worn.

Baber testified that on the skull of the dead man was the indentation described by the plaintiff. He described it as a rough spot on the skull. He did not pretend that he made such examination of the skull before it was buried, covered with partly decayed flesh as it was, as would enable him to know whether there was a rough spot on the skull or whether the upper part of the face was long or the lower part was short; and he did not pretend that he had examined the teeth or knew that the lower teeth were worn off as she said they were, or that there had been a bridge in his mouth, or that the upper teeth closed down over the lower teeth when his jaws were closed. These matters were submitted to the jury and the jury found in favor of the plaintiff upon these very questions.

■ The defendant strenuously objected to the admission of any evidence of what was found by the exhumation and examination of the dead body. These objections were based upon the fact that the plaintiff did not give the defendant notice, before the body was exhumed, that they intended to exhume the body, and give the defendant an opportunity to be present when the body was exhumed. Possibly this should have been done, but there is no statute, and no rule of law, of which we have any knowledge, that requires it to be done. Moreover, if defendants felt that what was found when the body was exhumed was not correctly shown by the testimony, we know of no obstacle in the way of defendant having the body again exhumed and showing that the testimony of the plaintiff was untrue if such were the case. If plaintiff's description of her husband was not true, it is strange, indeed, that defendant's counsel, two of whom were long time residents of Sisseton, could not have found someone who could have disputed it.

■ A great volume of written and printed matter relative to the presumption of death based upon the long absence of the deceased was introduced in evidence. Why this matter was injected into the record, we do not know because it has no relevancy whatever to any issue in the case.

We believe the evidence of the death of plaintiff's husband was sufficient to warrant the jury in finding a verdict for the plaintiff.

The judgment and order appealed from are affirmed.

All the Judges concur.